IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHRISTIANEE PORTER, ]<br>d/b/a *The Christi Show*, ]<br>]<br>Plaintiff, ]<br>]<br>v. ]<br>]<br>META PLATFORMS, INC., ]<br>]<br>Defendant. ] | CIVIL ACTION FILE NO.:<br><br>_____<br><br>JURY TRIAL DEMANDED |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Christianee Porter ("Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Meta Platforms, Inc. ("Meta" or "Defendant"), and alleges as follows:

I. NATURE OF THE ACTION

1. This action arises from Meta's negligent, grossly negligent, and willful failure to act after actual notice that Plaintiff's Facebook business account had been compromised and was being actively stripped of its followers, branding, and economic value.

2. Meta expressly represents in its Terms of Service that it promotes the safety, security, integrity, and protection of user accounts, including detecting,

1

preventing harmful conduct, and safeguarding the availability and integrity of its services.

3. Despite those representations, and despite having actual notice that Plaintiff's monetized business account was under active attack, Meta failed to implement reasonable safeguards, failed to halt known fraudulent activity, and allowed hackers to permanently transfer Plaintiff's followers and business identity while Meta was investigating the compromise.

4. Meta restored Plaintiff's access only after the harm was complete, then disclaimed responsibility by asserting that restoration of followers was "not technically feasible," despite having monitored and reviewed the account during the period of loss.

5. Plaintiff asserts claims sounding in tort and statutory duty, not contract. These claims arise from Meta's post-notice conduct and independent legal duties, not merely from Plaintiff's use of Meta's platform.

II. JURISDICTION, VENUE, AND NON-REMOVABILITY

6. This Court has original jurisdiction under 28 U.S.C. § 1332(a). The parties are completely diverse and the amount in controversy exceeds $75,000.

7. Plaintiff is a citizen of the State of Georgia.

8. Defendant Meta Platforms, Inc. is a Delaware corporation with its principal place of business in California.

9. Plaintiff seeks recovery of past, present, and future economic damages, including loss of earning capacity, loss of business value, loss of goodwill, destruction of an established going concern, punitive damages, injunctive relief, and attorney's fees pursuant to O.C.G.A. § 13-6-11.

10. This Court has personal jurisdiction over Meta because Meta purposefully availed itself of the Georgia market and caused tortious injury to a Georgia resident, suffered primarily in this District.

11. Venue is proper under 28 U.S.C. § 1391(b).

III. PARTIES

12. Plaintiff Christianee Porter is a Georgia resident and professional comedian and content creator operating under the business name *The Christi Show*.

13. Defendant Meta Platforms, Inc. owns and operates Facebook, including account-security systems, monetization programs, page-level account management functionality, and recovery protocols.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Monetized Business

14. Plaintiff built a substantial business presence on Facebook over several years.

15. Plaintiff used her Facebook business page to promote live comedy shows, advertise venues and tour dates, sell tickets, engage sponsors, and monetize content.

16. Meta knew Plaintiff's page was monetized because:

    a. Meta paid Plaintiff monthly creator and monetization payouts;

    b. Meta approved and processed paid advertisements for Plaintiff's comedy shows; and

    c. Meta facilitated commercial transactions tied directly to Plaintiff's business page.

17. Plaintiff's follower base constituted a core business asset and source of ongoing income.

### B. Account Compromise

18. On or about May 15, 2024, Plaintiff's Facebook accounts were hacked.

19. Hackers removed Plaintiff as administrator, renamed the business page, and began exploiting the account.

C. Meta's Actual Notice

20. Plaintiff and her counsel repeatedly notified Meta of the unauthorized access and ongoing harm.

21. By November 5, 2024, Meta was on actual notice that Plaintiff's business account was compromised and actively being exploited.

D. Formal Notice to Meta and Continued Inaction

22. On or about November 5, 2024, Plaintiff provided Meta with formal written notice detailing the unauthorized takeover of her Facebook business page, the ongoing misuse and exploitation of her followers, the monetized nature of the account, and the imminent risk of irreversible harm if immediate protective action was not taken.

23. Following receipt of Plaintiff's formal notice, Meta—through its representatives and legal counsel—acknowledged the compromise and represented that it was investigating the matter, including reviewing the affected business page and related activity.

24. Despite this actual notice and Meta's representations that it was investigating and addressing the issue, Meta failed to halt ongoing page activity, failed to freeze or secure the compromised account, and failed to prevent further exploitation. Only after Meta was on notice and actively investigating did the hackers transfer Plaintiff's followers and business

identity to a separate page, a transfer that rendered the subsequent recovery of Plaintiff's account incomplete and caused irreversible harm.

E. Voluntary Undertaking and Assumption of Duty

25. After receiving actual notice, Meta affirmatively undertook to investigate, monitor, and review the compromised account and associated business page.

26. By voluntarily undertaking those actions, Meta assumed a duty to exercise reasonable care in conducting its investigation and recovery efforts and to take reasonable steps to prevent foreseeable and ongoing harm.

27. Meta breached that duty by failing to secure the account, halt known fraudulent transfers, and prevent irreversible loss while Meta was actively investigating.

28. Meta's negligent performance of its voluntary undertaking increased the risk of harm and directly caused damages that would not have occurred had Meta exercised reasonable care.

F. Meta's Security and Safeguard Representations

29. Meta represents in its Terms of Service, including § 1.5, that it works to promote safety and security, detect and prevent harmful conduct, and protect the integrity and availability of user accounts and services.

30. These representations concern specific operational safeguards, not mere aspirational statements.

31. Plaintiff reasonably relied on those representations in operating her monetized business on Meta's platform.

G. Ongoing Harm After Notice

32. While Meta was on notice and investigating, hackers were permitted to transfer Plaintiff's followers and business identity to another account through Meta-controlled systems.

33. Meta failed to halt these actions despite knowing Plaintiff's page was a monetized business.

34. Meta restored Plaintiff's access only after the harm was complete.

H. Damages

35. As a direct and proximate result of Meta's conduct, Plaintiff suffered severe and permanent economic harm.

36. As a direct and proximate result of Meta's failure to secure Plaintiff's account after notice and during its investigation, Plaintiff lost the ability to communicate with and market to her established audience, promote live comedy performances, advertise upcoming shows, sell tickets, engage sponsors, and maintain ongoing business relationships that depended on access to her follower base. The transfer of Plaintiff's followers during

Meta's investigation permanently severed those revenue-generating channels, impaired Plaintiff's goodwill and brand equity, and caused the destruction of the going-concern value of Plaintiff's business and her future earning capacity.

37. Plaintiff has suffered and will continue to suffer:

    a)  Loss of past income;

    b)  Loss of current income;

    c)  Loss of future income and earning capacity;

    d)  Permanent diminution of business value; and

    e)  Loss of goodwill and brand equity.

38. Plaintiff seeks recovery of past, present, and future damages in an amount to be determined by the jury.

## V. FORUM-SELECTION CLAUSE DOES NOT APPLY

39. Plaintiff's claims arise from post-notice tortious conduct, not contractual obligations.

40. Enforcement of Meta's forum-selection clause would be unreasonable and contrary to Georgia public policy.

## VI. LIMITATION-OF-LIABILITY CLAUSE DOES NOT APPLY

41. Contractual limitations cannot bar recovery for independent torts, gross negligence, or willful misconduct.

## VII. CLAIMS FOR RELIEF

### COUNT I – NEGLIGENCE (Post-Notice Conduct)

42. Plaintiff incorporates Paragraphs 1–41, including Paragraphs 22-28.

43. Meta owed Plaintiff a duty to exercise reasonable care once Meta had actual notice of the compromise.

44. Meta breached that duty by failing to freeze or secure the compromised account, failing to halt ongoing activity after notice, and failing to prevent the irreversible transfer of Plaintiff's followers while Meta was actively investigating.

45. Meta's negligence was the direct and proximate cause of Plaintiff's damages.

### COUNT II – GROSS NEGLIGENCE / WILLFUL MISCONDUCT

46. Plaintiff incorporates Paragraphs 1–41, including Paragraphs 22-24.

47. Meta acted with conscious indifference and reckless disregard for Plaintiff's business interests after formal notice.

48. Meta's conduct subjects it to liability for punitive damages.

## COUNT III – NEGLIGENT MISREPRESENTATION

49. Plaintiff incorporates Paragraphs 1–41.

50. Meta supplied false or misleading representations regarding account security and safeguards, including representations concerning the detection, prevention, and remediation of harmful conduct affecting monetized business accounts, upon which Plaintiff reasonably relied.

51. Plaintiff suffered economic loss as a result.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

52. Plaintiff incorporates Paragraphs 1–41.

53. Meta's improper post-notice conduct interfered with Plaintiff's existing and prospective business relationships, including relationships with venues, promoters, audiences, sponsors, and ticket purchasers that depended on Plaintiff's Facebook business page and follower base.

## COUNT V – INJUNCTIVE AND DECLARATORY RELIEF

54. Plaintiff incorporates Paragraphs 1–41.

55. Meta exercised exclusive control over the Facebook platform, page-merge systems, follower transfers, and remedial tools relevant to Plaintiff's compromised business account.

56. Meta restored Plaintiff's access but admitted that restoration of Plaintiff's followers to her original account is not technically feasible.

57. The continued existence and exploitation of Plaintiff's follower base on a separate account constitutes ongoing harm.

58. Where restoration is not feasible, equity requires narrowly tailored remedial action within Meta's exclusive control to prevent continued exploitation and mitigate harm.

59. Plaintiff seeks injunctive and declaratory relief directed solely at Meta, including disabling, restricting, or transferring control of any account that wrongfully received Plaintiff's followers as a result of the post-notice compromise, and implementing reasonable safeguards to prevent recurrence.

COUNT VI – ATTORNEY'S FEES AND EXPENSES

(O.C.G.A. § 13-6-11)

60. Plaintiff incorporates Paragraphs 1–41, including Paragraphs 22–24.

61. Plaintiff seeks attorney's fees based on Defendant's bad faith conduct giving rise to the claims asserted herein and the unnecessary trouble and expense caused thereby, not based on Defendant's conduct in this litigation.

VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant:

A. Compensatory damages, including past, present, and future economic losses;

B. Punitive damages as permitted by law;

C. Injunctive and declaratory relief sufficient to prevent ongoing and future harm;

D. Attorney's fees, litigation expenses, and costs pursuant to O.C.G.A. § 13-6-11;

E. Pre- and post-judgment interest as allowed by law;

F. Where restoration of Plaintiff's followers to her original account is not feasible, and in the alternative, narrowly tailored equitable relief requiring

Meta to take reasonable remedial action within its exclusive control, including disabling, restricting, or transferring control of any account that wrongfully received Plaintiff's followers as a result of the post-notice compromise; and

G. Such other legal and equitable relief as the Court deems just and proper.

IX. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 26th day of January, 2026.

*/s/ Christina J. Peterson*
Christina J. Peterson
Bar No. 457840
*Attorney for Plaintiff*
CJ Peterson Law
2727 Skyview Dr. #345,
Lithia Springs, GA 30122
cjpetersonlaw@gmail.com
404-953-5257